IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| FPS NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1:18-cv-01248-LO-MSN |
| | ) | |
| IOGAMESPACE.COM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter comes before the Court on plaintiff FPS Networks, Inc.'s ("plaintiff" or "FPS Networks") Motion for Default Judgment (Dkt. No. 16). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

### I.  Procedural Background

On October 1, 2018, plaintiff brought an *in rem* action for cybersquatting and trademark infringement against defendants IOGameSpace.com and IOGamesSpace.com ("defendants" or "defendant domain names") (Dkt. No. 1). The Complaint alleges two counts: (1) a violation under the Federal Anti-Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1225(d), for the "registration, re-registration, maintenance, trafficking in, and/or use of domain names that is confusingly similar" to plaintiff's IOGAMES SPACE mark with bad faith intent to profit, Compl. (Dkt. No. 1) ¶¶ 51-57; and (2) an *in rem* trademark infringement violation under the Lanham Act, 15 U.S.C. § 1114(1), for the use and registration of plaintiff's mark without plaintiff's permission or authorization, *id.* at ¶¶ 58-68.

In the Complaint, plaintiff seeks judgment on both counts to be entered in its favor. Specifically, plaintiff seeks an order stating that (a) defendant domain names be transferred to plaintiff's domain name registrar of choice through a third-party registry operator, VeriSign, Inc. ("VeriSign"), and (b) any other domain names registered by the registrant of defendant domain names that resemble or include plaintiff's mark be transferred to plaintiff. *Id.* at 13. Finally, plaintiff seeks an award of reasonable attorneys' fees and costs incurred pursuant to 15 U.S.C. § 1117(a), among any other relief as the court may deem just and proper. *Id.*

On October 16, 2018, plaintiff filed a declaration of Alexander B. Owczarczak, stating that it effectively served process on defendant domain names (Dkt. No. 12). On November 5, 2018, plaintiff moved for an entry of default judgment (Dkt. No. 13), and the Clerk of Court entered default against defendants on November 13, 2018 (Dkt. No. 15). That same day, November 13, 2018, plaintiff filed a Motion for Default Judgment (Dkt. No. 16), along with a Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 17) and a Notice of Motion for November 9, 2018 (Dkt. No. 18). Plaintiff seeks an order granting its motion, entering default in its favor, directing VeriSign to change the registrar of record for defendant domain names to GoDaddy.com LLC ("GoDaddy") and directing GoDaddy to change the registrant of the domain names to plaintiff, and dismissing without prejudice plaintiff's *in rem* trademark infringement claim. Pl. Proposed Order (Dkt. No. 16-1) 1-2. On December 7, 2018, counsel for plaintiff appeared at the hearing on plaintiff's Motion for Default Judgment before the undersigned and no claimant appeared on behalf of defendant domain names (Dkt. No. 19).

## II.   Factual Background

The following facts are established by the Complaint (Dkt. No. 1) and Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 17).

Plaintiff is a corporation organized and existing under the laws of Alberta, Canada, with a principal place of business in Edmonton, AB Canada. Compl. (Dkt. No. 1) ¶ 2. Founded in 2000, plaintiff created and cultivated multiple websites with educational and gaming content. *Id.* at ¶¶ 12-13. On May 16, 2016, plaintiff launched the IOGAMES SPACE site and service, available at IOGames.Space. *Id.* at ¶ 16. IOGAMES SPACE hosts a list of ".io games," meaning games designed to be played in full screen browser windows that are typically multiplayer, and acts as a central repository to identify and provide access to .io games that were previously difficult to find on the internet. *Id.* at ¶ 17. Plaintiff's centralized repository of .io games filled a void in the market and has become the largest and fastest growing .io games site in the world, receiving 82 million visits from 32 million unique users since its launch. *Id.* at ¶¶ 19-21. In addition to maintaining the IOGAMES SPACE site and services, plaintiff interacts with the .io gaming community through social media accounts. *Id.* at ¶ 23.

Plaintiff has consistently used the IOGAMES SPACE mark through the IOGames.Space site and social media accounts since May 16, 2016. *Id.* at ¶ 24. The IOGAMES SPACE mark and site have been the subject of widespread promotion and press coverage including coverage by news and industry publications from around the world, such as German Press Agency GmbH, LifeHacker.com, Schieb.com, 36KR.com, Game8.vn, Thomas Gaming, and more. *Id.* at ¶ 25. Through promotion of the mark by plaintiff and third-parties, plaintiff is entitled to common law trademark protection. Additionally, plaintiff has filed U.S. Trademark Application No. 88009476 directed to the word mark "IOGAMES SPACE." *Id.* at ¶ 29.

Based on the records in the WHOIS database of domain name registrations, defendant domain names are registered by the registrar PDR Ltd. d/b/a PublicDomainRegistry.com to an unknown registrant identified as "Domain Admin" at Privacy Protect, LLC. *Id.* at ¶¶ 4-5.

Defendant domain names represent "unauthorized colorable imitations" of the IOGAMES SPACE mark by merely copying the mark with .COM added to the end. *Id.* at ¶¶ 28, 30. Defendant domain names were registered after the launch and widespread promotion of the IOGAMES SPACE mark, *id.* at ¶¶ 28, 31, for the purpose of obtaining internet visitors when such visitors, intending to visit the IOGames.Space site, accidentally visit IOGamesSpace.com or IOGameSpace.com as the .COM top-level domain is more common than the .SPACE top-level domain. *Id.* at ¶ 33. Defendant domain names generate revenue when visitors go to those sites and click on a pay-per-click advertisement link that brings the visitors to a third-party website. *Id.* at ¶ 35.

### III.   Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. The court has original subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) because this action arises under federal law, the ACPA and the Lanham Act. There is *in rem* jurisdiction over defendant domain names pursuant to 15 U.S.C. § 1225(d)(2)(A)(ii) because their listed registrant, "Domain Admin" at Privacy Protect, LLC, is being concealed and thus plaintiff cannot obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) and/or plaintiff, despite its due diligence, has been unable to find a  person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A). Compl. (Dkt. No. 1) ¶ 8. Venue is proper pursuant to 15 U.S.C. § 1125(d)(2)(C) because the .COM domain name registry operator, VeriSign, is located within this Court's judicial district and defendant domain names are .COM domain names. *Id.* at ¶ 10.

The ACPA provides that for *in rem* actions, service of process must be made by:

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address

provided by the registrant to the registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing
the action.

15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa)-(bb). Plaintiff has complied with subsection (aa) by providing the current registrant of defendant domain names with notice of plaintiff's intent to proceed *in rem* and a copy of the Complaint, sent to the postal and email addresses on file with the registrar. Pl. Mem. In Support of Mtn. Publication, Ex. A (Dkt. No. 5-1) ¶ 6. Plaintiff further complied with subsection (bb) by filing a Motion for Service of Publication on October 5, 2018 (Dkt. No. 4), which the Court granted on October 9, 2018, requiring plaintiff to publish the Order in *The Washington Times* or *The Washington Post* within fourteen (14) days after entry of the Order and to file a declaration within twenty (20) days after entry of the Order describing the steps plaintiff took to comply with the Order (Dkt. No. 7). Accordingly, on October 12, 2018, plaintiff published a copy of the Court's October 2018 Order in *The Washington Times* advising defendants of the instant action and filed a declaration describing plaintiff's compliance with the Court's Order on October 16, 2018. *See* Owczarczak Declr. (Dkt. No. 12) ¶¶ 4-5. Because defendants failed to file an answer or respond within twenty-one (21) days from the date of publication in *The Washington Times*, the Clerk entered default as to defendants (Dkt. No. 15).

## IV.   Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l*

*Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact in the Complaint are deemed to be admitted.

**V.    Analysis**

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the Complaint (Dkt. No. 1), supported by plaintiff's Motion for Default Judgment (Dkt. No. 16) and Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 17), establish that defendants violated the ACPA. Given plaintiff's request, the undersigned further finds that Count Two, *in rem* trademark infringement, should be dismissed without prejudice.[1] Accordingly, plaintiff is entitled to the relief requested in its motion, the transfer of defendant domain names to plaintiff.

As a preliminary matter, the ACPA protects both registered marks as well as unregistered common-law marks. *See Lee v. Kremnev*, 2014 WL 7345986, at *4 (E.D. Va. Dec. 23, 2014); *B&J Enters., Ltd. v. Giordano*, 329 Fed. App'x 411, 416 (4th Cir. 2009). Based on plaintiff's use of the IOGAMES SPACE mark in United States commerce in connection with the advertisement, provision, distribution, and promotion of .io games, plaintiff is entitled to common-law trademark

---

[1]     In plaintiff's brief, it requested "that the Court dismiss the Second Count of *In Rem* Trademark Infringement [under the Lanham Act] without prejudice given that the only relief being sought may be ordered pursuant to the First Count of *In Rem* Cybersquatting." Pl. Br. (Dkt. No. 17) 1 n. 1.

protection of the IOGAMES SPACE mark. *See, e.g.*, *Acme Billing Co. v. Doe*, 2015 WL 2401429, at *4 (E.D. Va. May 18, 2015) ("Acme Billing, as the named registrant of defendant Domain Names, used them in commerce in association with the provision of products and services to internet consumers thereby establishing common[-]law trademark protection in the corresponding trademarks.").

The ACPA provides that a person is liable to a trademark owner if that person (1) registers, traffics in, or uses a domain name that is a trademark or is identical or confusingly similar to a distinctive or famous mark and (2) has a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001); *Agri-Supply Co*, 457 F. Supp. 2d. at 662-63. The Complaint pleads both that defendant domain names are confusingly similar to plaintiff's distinctive and/or famous IOGAMES SPACE mark and that the registration and use of defendant domain names were in bad faith. *See* Compl. (Dkt. No. 1) ¶¶ 39, 44-46, 49, 53, 66.

First, the IOGAMES SPACE mark is distinctive and/or famous. Since at least May 2016, plaintiff has used the IOGAMES SPACE mark in interstate commerce "to provide consumers with a central repository to identify and provide access to .io games that, previously, were scattered about the internet and, as such, difficult to find." Compl. (Dkt. No. 1) ¶ 17. Through plaintiff's and third-parties' promotion of [IOGames.Space](IOGames.Space) and the IOGAMES SPACE mark, the mark has become famous and/or distinctive through the United States in connection with plaintiff's site and services. For example, the site and mark have gained widespread promotion and press coverage, "including coverage by news and industry publications from around the world including, for example, German Press Agency GmbH, LifeHacker.com, Schieb.com, 36KR.com, Game8.vn, Thomas Gaming, and more." *Id.* at ¶ 25. Since its launch, the IOGAMES SPACE site has received

82 million visits from 32 unique users. *Id.* at ¶ 21. Based on plaintiff's use of the IOGAMES SPACE mark in interstate commerce, continuous use of the mark for over two years, and plaintiff's highly publicized and successful business, plaintiff's mark has attained widespread public recognition associated with plaintiff's site and services. *See also Central Source LLC v. annualcreditreport.com*, 2014 WL 3811162, at *7 (E.D. Va. Aug. 1, 2014) (finding the AnnualCreditReport mark as distinctive "[b]ased on the continuous use of the [] mark for almost ten years in connection with Central Source's highly publicized and successful business, [and] that the AnnualCreditReport mark has attained widespread public recognition and has become identified exclusively with Central Source's goods and services in the minds of consumers"). Accordingly, the undersigned finds that the IOGAMES SPACE mark is famous and/or distinctive.

The next consideration is whether defendant domain names are identical or confusingly similar to plaintiff's IOGAMES SPACE mark. "In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir.1995)); *see also Agri-Supply Co.*, 457 F. Supp. 2d at 664 (holding that defendant's domain name "Agrisupply.com" was "confusingly similar" to plaintiff's trademark "Agri-Supply," including the domain name "Agri-Supply.com"). Defendant domain names—IOGameSpace.com and IOGamesSpace.com—are virtually identical to plaintiff's IOGAMES SPACE mark with the primary difference being the .COM versus .SPACE top-level domain signifier, Compl. (Dkt. No. 1) ¶ 33, which does not diminish their confusing similarity, *see, e.g., Investools, Inc. v. Investtools.com*, 2006 WL 2037577, at *3 (E.D. Va. July 17, 2006) ("The addition of a '.com' to

8

Plaintiff's mark is of minimal importance in distinguishing the mark and diminishing the likelihood of confusion, as many internet users are likely to associate the Defendant domain names with [Plaintiff's] mark.") (internal citations omitted). Moreover, defendants appear to be engaging in "typosquatting," a form of cybersquatting where domain names represent typographical errors of plaintiff's mark to take advantage of common errors made by consumers when attempting to reach IOGames.Space. *See, e.g.*, *Central Source LLC*, 2014 WL 3811162, at *7 ("The defendant domain names represent typographical errors of the AnnualCreditReport mark and the registration and use of the defendant domain names reflect…'typosquatting.'"). Thus, the undersigned recommends finding defendant domain names confusingly similar to plaintiff's mark.

Having found that plaintiff's IOGAMES SPACE mark is famous and/or distinctive and that defendant domain names are confusingly similar to plaintiff's mark, the last consideration is whether defendant domain names were registered or used in bad faith with the intent to profit. The ACPA lists several factors that a court may consider in determining bad faith, but do not need to be exhaustively considered. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005). These factors include:

(I) a defendant's intellectual property rights in the domain name;

(II) the extent to which the name consists of defendant's legal name;

(III) a defendant's prior use of the domain name in connection with the bona fide offering of any goods or services;

(IV) a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark;

(VI) a defendant's offer to transfer, sell, or otherwise assign the domain name to the plaintiff or any third party for financial gain without having used, or the intent to use, the domain name in the bona fide offering of any goods or services;

(VII) a defendant's provision of misleading or false contact information when applying for registration of the domain name;

(VIII) a defendant's registration or acquisition of multiple domain names which it knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names without regard to the goods or services of the parties; and

(IX) to the extent to which the mark incorporating in a defendant's domain name registration is or is not distinctive.

*See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX).

Applying the criteria enumerated in § 1125(d)(1)(B), the undersigned finds in relevant part that: (1) defendants do not have intellectual property rights in the domain names, as evidenced by the lack of any response to the Complaint on behalf of defendants or any other claim that defendant domain names reflect intellectual property rights; (2) given the nature of plaintiff's IOGAMES SPACE mark and its promotion by plaintiff and third-parties, defendant domain names do not appear to reflect the legal name or names of the registrant; (3) defendants have not engaged in bona fide noncommercial or fair use of plaintiff's mark or a bona fide offering of any goods or services, as the websites displayed at defendant domain names display pay-per-click advertisements with content related to the legitimate IOGAMES SPACE site and services; (4) defendants are using the domain names to divert consumers away from plaintiff's site for commercial gain that has resulted in harm to plaintiff's mark; (5) defendants have supplied false contact information when registering the domain name by registering as an unknown registrant, "Domain Admin"; (6) defendants have sought to have the domain names be confusingly similar to plaintiff's mark; and (7) plaintiff's mark is distinctive.

Accordingly, plaintiff's Complaint pleads sufficient facts to show that plaintiff possesses common-law trademark rights in defendant domain names, that defendant domain names are

confusingly similar to plaintiff's IOGAMES SPACE mark, and that defendants have bad faith intent to profit from using the domain names. 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *Doughney*, 263 F.3d at 367. Therefore, the undersigned finds that plaintiff is entitled to relief under the ACPA.

## VI.     Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting Plaintiff's Motion for Default Judgment;

2) Entering an Order directing that VeriSign change the registrar of record for defendant domain names to plaintiff's registrar of choice, GoDaddy, and that GoDaddy take the necessary steps to have plaintiff listed as the registrant for the domain names; and

3) Dismissing Count Two of the Complaint because plaintiff's relief may be granted exclusively under the ACPA.

## VII.     Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant domain names at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
_____
Michael S. Nachmanoff
United States Magistrate Judge

December 27, 2018
Alexandria, Virginia

11